UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MELINDA MORGAN,

        Plaintiff,                                     Hon. Ellen S. Carmody

v.

                                                Case No. 1:18-cv-422

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the

evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age on her alleged disability onset date. (PageID.354). She possesses a ninth grade education and worked previously as a retail cashier and fast food worker. (PageID.68, 85). Plaintiff applied for benefits on October 7, 2013, alleging that she had been disabled since February 6, 2011, due to scoliosis, depression, Bell's palsy, carpal tunnel syndrome, anxiety, hip and knee pain, arthritis, kidney stones, asthma, and low blood pressure. (PageID.354-66, 188-89). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.178-200). Following a May 20, 2015 hearing, ALJ Lawrence Blatnik denied Plaintiff's claim. (PageID.131-52, 204-15). The Appeals Council subsequently remanded the matter to the ALJ. (PageID.220-23).

On November 8, 2016, ALJ Blatnik conducted a second hearing at which Plaintiff and a vocational expert testified. (PageID.78-130). In a written decision dated January 24, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.60-71). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.41-45). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

*See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) peripheral neuropathy; (2) degenerative disc disease and scoliosis of the lumbar spine; (3) osteoarthritis; (4) asthma; (5) sleep apnea; and (6) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.63).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she requires the option to alternate to standing for 3-5 minutes after one hour of sitting and to alternate to sitting for 3-5 minutes after every 30-45 minutes of standing/walking; (2) she can occasionally balance, stoop, kneel, crouch, and crawl; (3) she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (4) she must avoid all exposure to unprotected heights or moving parts; (5) she can tolerate occasional exposure to extreme cold or heat, humidity, or wetness; and (6) must avoid concentrated exposure to fumes, odors, dusts, and other pulmonary irritants. (PageID.64).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a

claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 480,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.112-16). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.      **ALJ's Description of the Relevant Medical Evidence**

The ALJ discussed the medical evidence at great length. Specifically, the ALJ stated as follows:

> The claimant participated in a consultative examination in October 2012, during the pendency of her previous application for disability benefits, conducted by Scott Lazzara, M.D. During this examination, the claimant reported a history of degenerative joint disease and shortness of breath. During his physical examination, Dr. Lazzara noted mild bronchial breath sounds without wheezes, [rales], or rhonchi. There was prolongation of the expiratory phase, but no accessory muscle use. There was no evidence of joint laxity, repentance, or effusion. The claimant had pain in the lumbar spine area, but had no difficulty getting on and off the examination table.

She had mild difficulty with heel and toe walking, squatting, and standing on her left foot. She had no difficulty standing on the right foot, and a straight leg raising test was negative. Range of motion was slightly decreased in the dorsolumbar spine, left shoulder, and both knees. Dr. Lazzara noted a mild left limp and guarded gait, but no use of any assistive device. Dr. Lazzara recommended use of an inhaler, avoidance of triggers and cessation of tobacco use (Exhibit B1F).

The claimant reports a history of shortness of breath. In an unsigned and undated Asthma Form, the claimant reported she was not being treated for asthma (Exhibit B5E). Physical examination in August 2013, after the claimant went to the emergency room complaining of nausea, vomiting, and dizziness, revealed a reasonably well developed, well nourished individual, in no acute distress. Her lungs were clear with no rhonchi, rales, or wheezes heard (Exhibit B3F). Physical examination from September 2013 revealed normal respiratory effort and auscultation (Exhibit B5F). The record indicates the claimant stopped smoking around August 2014. A chest electromagnetic x-ray taken in September 2014 revealed a stable chest with no acute cardiopulmonary pathology. Physical examination noted diminished breath sounds with expiratory rales in the right lower lung, but no shortness of breath when speaking in complete sentences (Exhibit B5F).

The claimant complains of low back pain and hip pain. The claimant received treatment from the Family Medical Clinic beginning in September 2013. She reported normal activities of daily living and limited outside activity. She complained of chronic leg and back pain with scoliosis. A neurological examination was normal, and a musculoskeletal assessment revealed increased thoracic kyphosis and mild scoliosis. The claimant indicated she did not use any ambulatory assistive device. A physical examination in November 2013 revealed no scoliosis (Exhibit B5F). The claimant attended an initial evaluation for physical therapy in December 2013 with the Community Health Center of Branch County. She again complained of pain in her back and hip, with tingling in her feet. She reported difficulty walking and putting on clothes. Practitioners observed an antalgic gait with decreased weight bearing in the left lower extremity, mild scoliosis to the left in the lower thoracic spine to lumbar region, tightness in the lumbar spine and gluteal region, and muscle guarding in the left lower quadrant. X-rays of the claimant's hips taken in October 2013 revealed no significant joint space narrowing or degenerative changes. There were no fractures, dislocation, or acute abnormalities. The bony pelvis was normal

other than some minimal degenerative spurring at the inferior sacroiliac joint. There was decreased range of motion in the lumbar spine and hip, and practitioners noted functional limitations in sitting, walking, standing, and sleeping. It was recommended the claimant would benefit from skilled therapy two times a week for four weeks to address these areas (Exhibit B4F). The claimant canceled a return visit, and never returned or called to schedule further treatments (Exhibit B6F).

The record indicates the claimant began using a cane for balance around August 2014 after reportedly tripping over her feet. She denied dizziness or lightheadedness at this time (Exhibit B5F). Magnetic resonance imaging (MRI) of the claimant's lumbar spine performed in January 2015 was generally unremarkable for the claimant's age. There was some mild disc protrusion at L5-S1, but no central canal stenosis. X-rays of the claimant's hips were negative, and there was no evidence of any hip pathology (Exhibit B8F). In March 2015, the claimant complained of low back and leg pain in treatment with Sturgis Hospital Pain Center. During a physical examination, there was some pain with flexion and extension. Palpation revealed bilateral tender spots and trigger points in an L4, L5 distribution. A straight leg raising was somewhat positive and sensation was decreased to light touch in her lower extremities. On follow-up in May 2015, she reported continued pain. There were some bilateral tender spots and trigger points, but a straight leg raising was negative. She received bilateral lumbar facet injections at L3-4, L4-5, and L5-S1 in June 2015 (Exhibit B16F).

The claimant complained of hip pain during treatment with the Community Health Center of Branch County in May 2016. She reported radiation of pain down her legs and also reported tingling in her feet. Practitioners noted trace edema in her lower extremities, but she also admitted to walking her dog at this time (Exhibit Bl IF). An electromyogram (EMG) performed in July 2016 revealed moderately severe polyneuropathy of both legs (Exhibit B12F). The claimant reported to the Emergency Room in July 2016 after injuring her ankle. Radiology imaging was unremarkable (Exhibit B13F). She returned in August complaining of continued symptoms, and practitioners indicated they were related to osteoarthritis (Exhibit B14F). An ultrasound of her lower extremities performed in October 2016 was normal (Exhibit B24F). The claimant was diagnosed with sleep apnea and practitioners noted good response to 9 centimeters (cm) of a continuous positive airway pressure (CPAP) device after a polysonmography study in January 2015 (Exhibit B11F).

> The claimant weighs approximately 181 pounds and is 63 inches tall, which results in a body mass index (BMI) of 32.1, which the National Institutes of Health (NIH) classifies as obese (Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults. NIH Publication No. 98-4083). The levels of obesity described by the NIH do not correlate with any specific degree of functional loss. Obesity can, however, cause or contribute to impairments in the musculoskeletal, respiratory, and cardiovascular body systems. I have considered this condition to determine if it alone, or in combination with other impairments, significantly limits the claimant's physical or mental ability to do basic work activities (20 CFR, Subpt. P, App. 1.00Q: 3.001: 4.00F: SSR 02-lp). There is no evidence of any specific or quantifiable impact on the claimant's pulmonary, musculoskeletal, endocrine, or cardiac functioning. It appears that her obesity is not the main cause of her osteoarthritis or asthma issues.
>
> The claimant participated in a second consultative examination in March 2015, again conducted by Dr. Lazzara. During this assessment, the claimant reported a history of chronic pain in her lower extremities and back. She denied physical therapy or surgical intervention, other than a carpal tunnel release on her right hand when she was 30 years old. She indicated she could perform activities of daily living, does not drive a motor vehicle, completes household chores, grocery shops in stores, reads and completes puzzles. The claimant denied trouble sitting, but reported she could stand for 15 minutes, walk half a block, and lift only ten pounds. Physical examination revealed the presence of trace edema, but no clubbing or cyanosis. The claimant's breath sounds were clear to auscultation and symmetrical, and there was no accessory muscle use. There was no joint laxity, crepitance, or effusion. The claimant's grip strength was intact, and her dexterity was unimpaired. The claimant had mild difficulty getting on and off the examination table, heel and toe walking, squatting, and standing on either foot. She had decreased range of motion in the cervical and dorsolumbar spine and both shoulders and knees. There was a right nasolabial fold droop, but her motor strength and muscle tone was normal. Dr. Lazzara observed the claimant had a guarded gait, without the use of an assistive device (Exhibit B7F).

(PageID.65-68).

**II.      The ALJ's RFC Assessment is Not Supported by Substantial Evidence**

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). As noted above, the ALJ concluded that Plaintiff can perform a limited range of light work. Plaintiff argues that she is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence.

While the ALJ found that Plaintiff suffered from several severe impairments, the ALJ failed to find that Plaintiff's alleged carpal tunnel syndrome constituted a severe impairment. Defendant expressly concedes that "the ALJ erred in finding that carpal tunnel syndrome was not a medically determinable impairment for plaintiff." (ECF No. 11 at PageID.712). Defendant further argues, however, that this error is harmless because Plaintiff has failed to establish that "her carpal tunnel syndrome, either by itself or in combination with any other medically determinable impairment(s), resulted in a more limited RFC than the one the ALJ set forth." (ECF No. 11 at PageID.712). The Court disagrees.

Plaintiff underwent carpal tunnel surgery on her right hand when she was approximately 30 years old. (PageID.548, 675). A number of years later, Plaintiff began to again experience carpal tunnel symptoms. On March 10, 2015, Plaintiff reported to Dr. R. Scott Lazzara that she was suffering carpal tunnel syndrome. (PageID.548). Following an examination, the doctor reported that Plaintiff could perform handling, fingering, and feeling

activities only one-third to two-thirds of the workday. (PageID.555). An examination of Plaintiff's hands and wrists, conducted on October 17, 2016, revealed a positive Phalen's Test.[2] (PageID.677-81). Plaintiff was prescribed Lyrica and wrist splints. (PageID.90, 677-81). A November 14, 2016 examination revealed decreased range of motion in Plaintiff's wrists and hands. (PageID.675). Plaintiff's care providers further noted that Plaintiff's medication and wrist splints were only helping "a little." (PageID.675).

While the record does not support the argument that Plaintiff's carpal tunnel syndrome renders her unable to work, the record likewise does not support the ALJ's RFC assessment which contains no limitations for such. Accordingly, the undersigned finds that the ALJ's RFC assessment is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such questions must accurately portray the claimant's impairments).

### III. Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of*

---

[2] Phalen's test is performed to determine the presence of carpal tunnel syndrome. *See* Tinels and Phalens Tests, available at http://www.carpal-tunnel-symptoms.com/tinels-and-phalens-tests.html (last visited on December 18, 2018). Phalen's test is performed by bending the patient's wrists downwards as far as they will comfortably go and pushing the backs of the hands together. The patient should hold this position for one minute. A positive test is indicated by numbness or tingling along the median nerve distribution. *Id.*

*Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.


Dated: December 18, 2018         /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge